Good morning. I'm Judge Gould and on my right is Judge Wynn. On my left, and deserving a special note of thanks, is Judge Presnell, who is visiting us from the Middle District Court for the Middle District of Florida. And Judge Presnell has a busy trial docket and graciously donated some time to help us with the Ninth Circuit's docket. We have two cases that are submitted on the briefs that I'll mention first to get that out of the way. One is Adrian v. Wells Fargo, Bank 18-35960. The other is United States v. Obermiller, which is Cases 18-30168 and 18-30170. And we'll proceed to our arguments with the next case to be argued being Estep v. Yordy. Let me also mention for the benefit of the lawyers, the time is set that's been allotted to the case on the clock that's there. The time is like a total time, so if the appellant's lawyer plans to do a rebuttal argument, the lawyer should stop before all the time is done and keep some powder dry so they can respond. The court will obviously add time if a judge is asking a question or judges have questions. And beyond that, I'm sort of a softy and might be able to add a minute at the end. But it's best if people can stay within their time when that's possible. Okay, why don't we proceed, please, on the case of Estep v. Yordy. For the appellant, we have, is it Robin Fyfe? Am I pronouncing that correctly? And then for the appellee, we have Mr. Anderson. And both of you get some special thanks from me also for traveling all the way from Boise to help us out today. Thank you. May it please the court, my intent is to reserve three minutes for my rebuttal and I will keep track of the time. I'll try to remind you if we can, but it's ultimately your responsibility. Thank you, Your Honor. I have a short period to argue and I have a long record that spans more than two years. And ultimately in preparing my comments, I attempted to give a 30,000 foot view of those two and a half years and what stands out is the distinct stages of what's going on procedurally in terms of what Mr. Estep's requests are and also in terms of what aspect of his competency was evaluated for purposes of being able to proceed. This case was filed in late 2010 and for the first eight odd months until June 2011, Mr. Estep wanted to hire private counsel. And that was the theme throughout. And also to, there were also competency questions. There was a, what we call in Idaho the 18 to 11 filed, the competency to proceed trial or to proceed in criminal proceedings specifically. He was found competent and there was a question of whether he was malingering or under-presenting. In June 2011, he seems to, he gives up. He's not going to be able to hire private counsel and that's when he broaches the question of, well, I might as well go on with myself. That he clearly throughout did not trust appointed counsel and when his own efforts failed, he attempted to represent himself. And it was that first June 2011 request that the Idaho Court of Appeals addressed or didn't address. They ultimately passed on the issue of whether or not the competency finding or incompetency finding was correct and said that the request was ambiguous and that he withdrew it by his subsequent appearances with counsel essentially. Those two issues were, are on point with Tamplin and the court could stop there. But the case nonetheless and Mr. Estep's requests lingered for another 18 months. There are these repeated what we call the kites, kites to represent himself, kites to represent himself. That first one in June 2011 triggered another 18 to 11 proceeding. He was again found competent and there was some, I think again, question of lingering but of course we don't have those records. And he's essentially said that the court never readdresses the question of whether or not he's competent. Which is contrary to the concept in Indiana where the competency is a fluctuating concept. It's certainly mental illnesses in terms of treatment. In this case I had never, there is no evidence of a mental health diagnosis that I can discern. There's questions of malingering and personality disorder. In November 2011 he enters this other period where he's been told no, stop asking. We already said no, stop asking. And he goes on a hunger strike and stops eating. And during that period there were what we call Title 66 proceedings to see if he was competent to give informed treatment. In other words, could he be force fed because he was going on a hunger strike because he was being forced to proceed with the attorney he did not want. Those proceedings don't evidence any type of reflection on his ability to proceed pro se. They reflect that he was objecting in the only way left to him after being repeatedly said no. That he didn't want to proceed with counsel and wanted to proceed pro se. Ultimately he's released to a hospital and restored in terms of I don't know what they do after somebody hasn't eaten in a while and he's better. And then he continues to make the request via kite. And there at the very end there is another formal request on the record that was denied. And finally. Counsel, could I ask you a question? Of course, Your Honor. You said he's making a request by kite. Who's the kite going to? Usually a kite is something prisoners file in the prison system. It's not like a request directly to a judge. Is that the case here? No, Your Honor. In this specific instance and every jail or prison I've dealt with has had this type of kite where it's the inmate communication directly with that prison. But many of the county jails in Idaho also have kites to request their access to court forms. Or in this situation the kite itself has a spot where it is being directed. One of the options for it to go to is the court. And then they do end up at the court. The court's complaint with those is that they're ex-party, that they weren't copied. And what the court was doing with them then was just copying counsel once the court received one. Okay. Thank you. And then in my arguments on the, regardless of the proper propriety of the form, the court addressed those as motions on several occasions. But ultimately did he not indicate that he was not going to accept those kites anymore as a pleading? I believe at one point he did say that, but then they were accepted after that point as well. He was told not to file things without, he was represented to stop filing things pro se. I can look while I'm sitting and find that date. No, that's all right. My recollection, it's in the middle. Okay. I think it was toward the end. I'll look. Finally, at the trial, the court of appeals finding that he somehow waived by not re-requesting. He'd been, by the end, the judge was very, very frustrated with any additional requests. But the judge did make that finding that he had sufficient understanding to give up his right to be present. And there's pros and cons with that. And it's essentially a finding that he had. I think that standard would be equal, that he was competent to represent himself. There's pros and cons. He made that knowing choice. That was the argument that appellate counsel in the state appellate court had argued, that this essentially was a competency finding, whereas he'd previously said a month earlier he wasn't competent. There's no way. Stop asking. Counsel, you can use your time however you want, but I want to just remind you, you said initially you would do three minutes of rebuttal. I'll add two minutes to your clock because I took some time inquiring with you. But if you want to have rebuttal, you have to stop at that point. Could you please add the clerk? Please add two minutes to the argument times. Thank you, Your Honor. That was going to be my last point before sitting down and reserving the remainder of my time for rebuttal. Thank you. Good morning, and may it please the Court. The primary issue in this case is the Idaho Court of Appeals' decision that SSTEP's request on June 9, 2011, was equivocal. And we have to start that analysis, that examination of the Idaho Court of Appeals' decision, from the underlying presumption that there is a strong presumption against waiver of counsel. That's from Brewer. That was cited in the Idaho Court of Appeals' decision. That was the foundation upon which the Idaho Court of Appeals made their decision that there was, in fact, an equivocal request. Now, counsel relies extensively upon this Court's decision in Tamplin. But if you look at the colloquy in Tamplin, it is drastically different than what the Idaho Court of Appeals examined in this case. The colloquy that we had in Tamplin, and keep in mind that Tamplin had been representing himself already for a number of months, and simply walked in with an attorney that he had retained that was disbarred two days later. But at a hearing shortly after that, Tamplin wanted to make sure that he was representing himself. And the trial court said, you don't wish to have counsel appointed to represent you. And Tamplin unequivocally said, no. The court continued, it's your request to return to your status in representing yourself in this case. He unequivocally stated, yes. And then he goes on to say, I'm going to represent myself. I have a right to go pro per at this time. I'm trying to go back to pro per. And he goes on later on and says, I don't want no public defender, none of the ones that you are going to appoint. Now, let's compare that with what happened on June 9th. At least what the Idaho Court of Appeals examined. The Idaho Court of Appeals focused upon the words probably, I prefer, I think, if possible. Those are not unequivocal words. Those are equivocal words. And this court, as well as other courts, at least in the context of requesting counsel and interrogations, have repeatedly said, those are not unequivocal words to request counsel. Did the trial judge ever indicate that he thought the request was equivocal? Well, Your Honor, not really. The court did, admittedly, after some questioning and some confusion, the court did say, you were saying ex parte. That was the word that Estep was using. And the court went on to say, are you saying you want to represent yourself impropriate? And Estep says, impropriate. He parrots what the judge said. I'm not convinced, and I don't believe the Idaho Court of Appeals was convinced that he understood that word and was really, in fact, asking unequivocally to represent himself. And above and beyond that, if you look at the colloquy or what took place even after that, Estep continued to use the words probably. Counsel, let me ask you a question. At some point on this day, I seem to remember the judge saying something like, if you want to represent yourself, we're going to have to set that for hearing another day. That was stated early on. And, in fact, they were talking about Mr. Rose, the guardianship attorney. Okay. Was there ever a traditional FARETA hearing where the dangers of self-representation or disadvantages were floated and weighed or raised by the judge? Your Honor, when you say formal, there was a type of FARETA hearing. I don't believe that the dangers were ever discussed, and I don't believe the dangers were ever discussed because the trial judge wasn't convinced that he wanted to represent himself. In other words, before we get to the question of FARETA, we have to address the question of whether there's an unequivocal request. And in this case, the Idaho Court of Appeals looked at the entirety of the transcript, all of the evidence even before the June 9th hearing, and said, when you look at all of this, there was never an unequivocal request for counsel. Now, one of the things that can be addressed in the context of not only of the colloquy that took place on June 9th, but there's also the additional backdrop. That's what the Idaho Court of Appeals concluded it was. The backdrop associated with his issues of competency to proceed as opposed to competency to represent self. And, of course, they are different. You can be entirely competent to proceed under FARETA, but not competent to represent self under Edwards. And the Court of Appeals looked at that backdrop and said, that backdrop, all of the things that had taken place up to that point in time, and even what had taken place after, the hunger strike, the sleeping on the mattress on the bed, all of the suicide attempt in the jail, all of those things indicated to the Court of Appeals that there was a backdrop associated with this issue of equivocation. Coupled with the notion that he was back and forth on whether he was going to retain counsel or not retain counsel. Keep in mind that his problem was with the public defenders that he had. He didn't like them. And he kept asking more and more, and for change, to the point that he actually threatened the original trial judge, and that was Judge Simpson. And Judge Mitchell is the one that actually came in and towards the end of the case conducted the trial, made the decisions, I believe it was the day of trial, December 10th, regarding whether the court was going to grant Estep's request for abstentia. And the court, that court even, looked at everything that had happened and said, yeah, you can do that. And you're competent to proceed, but there was never a determination as to his competency to self-represent. Unless the court has additional questions, I would ask the court to affirm the magistrate in this case. Thank you. Thank you. Thank you, counsel. Thank you. I want to start out by commenting about the proceedings that occurred after the June 2011 proceeding. I had, in preparing for today, re-read Mr. Estep's brief in support of petition for review after that Court of Appeals decision that said he had abandoned that during oral argument. And the brief is more about the post-June 2011 request than it is about the prior. Mr. Estep didn't abandon his claims regarding that the court was going to grant Estep's request for abstentia. That, I don't know, the last 18 months at all. I don't know what was said during oral argument. They weren't recorded at that time. I have a vast experience arguing before the Court of Appeals, unlike this Court in Idaho. And I'll say that sometimes I've thought that they didn't quite understand some comment I made during oral argument. And to think that something could be forever precluded and waived, even though I've re-presented it in a petition for review that was denied by the Idaho Supreme Court. It just can't be, it's not a, it turns the idea of the comedy underlying exhaustion on its head. I won't, in terms of Tamplin, I addressed the similarities in my brief. And I won't comment beyond that. But I believe that this case is, it's the, there's some factual procedural difference. But the fundamental idea that wanting private counsel and not wanting the public defender doesn't make a request ambiguous. Finally, to say that the issue for the trial court, the state trial court, was equivocation is not a fair reading of the record. The findings are always, you're not competent. Whether you're competent to represent yourself, to proceed is in question. You can't represent yourself. There was no question that he wanted to. And if there had been at that initial proceeding, he certainly clarified that I want to proceed pro se, I want to proceed pro se. Those kites are all in my excerpts. Oh, and I want to clarify one point. The second judge, Judge Mitchell, that counsel mentioned also covered the November 2012 hearing. So that final motion to withdraw by the attorney that was representing him at that time. For all the reasons, unless there's further questions, I ask this court to reverse the order of the decision. Okay, thank you, counsel. Thank you. We thank both counsel for their excellent advocacy. And also, again, for traveling from Boise to help us out today. We appreciate it.
judges: Gould, Nguyen, Presnell